IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**KIM ALTON REED, JR.,**

    Plaintiff,

v.                                                                               Civil Action No. **3:20CV200**

**T. ROBINSON,** *et al.*,

    Defendants.

## MEMORANDUM OPINION

Kim Alton Reed, Jr., a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] In his Particularized Complaint ("Complaint," ECF No. 16), Reed raises the following claims for relief:[2]

| | |
|---|---|
| Claim One: | Defendants Harris, Ngoule, Smith, and Minter denied Reed "adequate medical care" in violation the Eighth Amendment.[3] (*Id.* at 8.) |
| Claim Two: | Defendants T. Robinson and I. Hicks failed to provide "reasonable safety" for Reed in violation of the Eighth Amendment. (*Id.*) |
| Claim Three: | Defendant Minter falsified records to avoid liability. (*Id.*) |

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the spelling, punctuation, and capitalization and omits the emphasis in quotations from the parties' submissions, unless otherwise noted.

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

The matter is before the Court on the Motion for Summary Judgment filed by Sgt. India Hicks ("Sgt. Hicks"). (ECF No. 39.) Reed filed a Brief in Opposition. (ECF No. 47.) For the reasons stated below, the Motion for Summary Judgment will be GRANTED.[4]

## I. SUMMARY JUDGMENT STANDARD

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)). In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "*scintilla* of evidence" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. 442, 448 (1872)). "[T]here is a preliminary question

---

[4] On July 12, 2021, the Court dismissed Defendants Harris, Ngoule, Smith, and Minter from this action because Reed failed to timely serve them. (ECF Nos. 62, 63.) Thus, Claims One and Three are no longer before the Court. Defendant Robinson recently filed a Motion for Summary Judgment. (ECF No. 58.) The Court will address that motion separately. Accordingly, the Court now considers Claim Two only insofar as it concerns Sgt. Hicks.

2

for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In support of her Motion for Summary Judgment, Sgt. Hicks submits: (1) her own declaration ("Hicks Declaration," ECF No. 40-1); (2) copies of various incident reports, institutional records, medical records, and photographs (ECF No. 40-2); (3) an Offender Grievance Report (ECF No. 40-3); (4) a declaration from Christy M. Jones, an Institutional Grievance Coordinator at Lawrenceville Correctional Center ("LVCC") ("Jones Declaration," ECF No. 40-4); and, (5) a copy of Operating Procedure 866.1, Offender Grievance Procedure (ECF No. 40-5).

In opposition to the Motion for Summary Judgment, Reed submits: (1) his own sworn statement ("Reed Declaration," ECF No. 47-2); (2) a copy of an informal complaint, dated September 5, 2018 (ECF No. 47-1, at 1); (2) a copy of an informal complaint, dated September 12, 2018 (*id.* at 3); (3) a copy of a regular grievance, dated September 27, 2018 (*id.* at 4–5); and, (4) a copy of a letter to the Regional Ombudsman, dated October 15, 2018 (*id.* at 6–7). The Court also considers the factual allegations contained in Reed's Particularized Complaint, which were sworn to under penalty of perjury. (*See* ECF No. 16, at 11.)

At this stage, the Court is tasked with assessing whether Reed "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). The facts offered by an affidavit or sworn declaration must be in the form of admissible evidence. *See* Fed.

R. Civ. P. 56(c)(4). In this regard, the sworn statement "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted).[5]

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Reed.

## II. RELEVANT FACTS

### A. The Dining Hall Incident

On August 30, 2018, Reed was eating at the dining hall at LVCC. (Reed Decl. ¶ 3.) The dining hall "was []crowded." (*Id.*) Sgt. Hicks "was one of the officers in charge of security at that time." (*Id.*) Inmates entering the dining hall "pass through the security booth" and are subject to random pat downs at that checkpoint. (Hicks Decl. ¶ 8.) Reed was not patted down upon entry. (Reed Decl. ¶ 4.) Another inmate struck Reed from behind with a "lock in a sock." (*Id.* ¶ 5.)

---

[5] Reed makes several statements that are of no value in assessing the propriety of summary judgment. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) ("[a]iry generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment" (internal quotation marks omitted) (citations omitted)). For instance, Reed suggests that Sgt. Hicks violated policy in various ways. (Reed Decl. ¶¶ 4, 6, 7.) He fails, however, to cite to any specific policy that he contends was violated, much less explain how Sgt. Hicks violated it. Reed also avers that the dining hall was "overcrowded." (Reed Decl. ¶¶ 3, 6.) He does not specify, however, the number of people in the dining hall or its maximum capacity. Thus, while Reed can say that he dining hall was crowded, he has not established a basis for saying that it was "overcrowded." Similarly, Reed suggests that no inmates were patted down in the dining hall. (Reed Decl. ¶ 4.) But he fails to allege that he personally observed every interaction between each inmate and the various guards that were on duty. In sum, these statements are conclusory and fail to create a material dispute of fact. *Roane*, 378 F.3d at 400–01.

4

Sgt. Hicks "observed Reed and another inmate, T. Raigns ("Raigns"), fighting." (Hicks Decl. ¶ 6.) "Ofc. Robinson immediately notified command staff," and "[a]n Emergency Response Team consisting of Sgt. Mays and Ofc. Garnes promptly responded." (*Id.*) The Emergency Response Team is assigned at all times to respond to safety incidents like inmate fights. (*Id.* ¶ 4.) Reed and Raigns were immediately restrained and were charged with fighting. (*Id.*) Both men "were taken to the Medical Department for a presegregation medical evaluation." (*Id.*)

Sgt. Hicks "had no forewarning that Reed and Raigns would begin fighting on August 30, 2018. Both inmates were classified in the same housing unit. They were not listed as 'keep separate.' There were no complaints, reports, or other information indicating that a physical altercation was imminent." (*Id.* ¶ 10.)

### B. Grievance Procedure at LVCC

Operating Procedure § 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints at LVCC. (Jones Decl. ¶ 5.) Offenders receive an orientation to the grievance procedure system when they arrive at a VDOC facility. (Operating Procedure § 866.1.IV.A.4.) Operating Procedure § 866.1 requires that, before submitting a formal grievance, the inmate must demonstrate that he or she has made a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints. (*Id.* § 866.1.V.A.) Generally, a good faith effort requires the inmate to submit an informal complaint form. (*Id.* § 866.1.V.A.1–2.) If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form. (*Id.* § 866.1.VI.A.2.)

"The original *Regular Grievance* (no photocopies or carbon copies) should be submitted by the offender through the facility mail system to the Facility Unit Head's Office for processing

by the Institutional Ombudsman/Grievance Coordinator." (*Id.* § 866.1.VI.A.2.b.) The offender must attach to the regular grievance a copy of the informal complaint or other documentation demonstrating their attempt to informally resolve the issue. (*Id.* § 866.1.VI.A.2.a.) Additionally, "[i]f 15 calendar days have expired from the date the *Informal Complaint* was logged without the offender receiving a response, the offender may submit a *Grievance* on the issue and attach the *Informal Complaint* receipt as documentation of the attempt to resolve the issue informally." (*Id.* § 866.1.V.A.3.) A formal grievance must be filed within thirty days from the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the offender's control. (*Id.* § 866.1.VI.A.1.)

### 1. Grievance Intake Procedure

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. (*Id.* § 866.1.VI.B.) A grievance meeting the criteria for acceptance is logged in on the day it is received, and a "Grievance Receipt" is issued to the inmate within two days. (*Id.* § 866.1.VI.B.3.) If the grievance does not meet the criteria for acceptance, prison officials complete the "Intake" section of the grievance and return the grievance to the inmate within two working days. (*Id.* § 866.1.VI.B.4.) If the inmate desires a review of the intake decision, he or she must send the grievance form to the Regional Ombudsman within five calendar days of receipt. (*Id.* § 866.1.VI.B.5.)

### 2. Grievance Appeals

Up to three levels of review exist for a regular grievance. (*Id.* § 866.1.VI.C.) The Facility Unit Head of the facility in which the offender is confined is responsible for Level I review. (*Id.* § 866.1.VI.C.1.) If the offender is dissatisfied with the determination at Level I, he or she may appeal the decision to Level II, a review of which is conducted by the Regional Administrator, the

Health Services Director, the Superintendent for Education, or the Chief of Operations for Offender Management Services. (*Id.* § 866.1.VI.C.2.) The Level II response informs the offender whether he or she "qualifies for" an appeal to Level III. (*Id.* § 866.1.VI.C.2.g.)

"To exhaust all administrative remedies, an inmate must exercise all available appeals within the time limits provided under OP 866.1." (Jones Decl. ¶ 6.)

### C. Disputed Facts Pertaining to Exhaustion

Christy M. Jones, the Institutional Grievance Coordinator at LVCC swears that "Reed *never* filed a Regular Grievance related to the August 30, 2018 incident, or otherwise." (Jones Decl. ¶ 8 (emphasis added).) Attached to his Brief in Opposition, however, Reed submitted a copy of a Regular Grievance, in which he complained, *inter alia*, that, "[o]n 8.30.18, I was hit in the head with a weapon." (ECF No. 47-1, at 4.) The Regular Grievance was signed by Reed on September 27, 2018, and bears a stamp reflecting that it was received in the Grievance Department on October 11, 2018.[6] (*Id.* at 4–5.)

### III. ANALYSIS

### A. Exhaustion

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy

---

[6] It appears that the Regular Grievance was rejected as filed late, a fact that Reed vigorously disputes. (*See* ECF No. 47-1, at 5–7.)

7

the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court has instructed that § 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "so that the agency addresses the issues on the merits." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Sgt. Hicks ask the Court to dismiss Claim Two because Reed failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, Sgt. Hicks bear the burden of pleading and proving lack of exhaustion. *Jones*, 549 U.S. at 216.

Sgt. Hicks argues that Reed never filed a Regular Grievance related to the incident on August 30, 2018. That is belied by the record. Reed clearly filed a Regular Grievance related to the August 30, 2018 incident. (*See* ECF No. 47-1, at 4–5.) Thus, Sgt. Hicks has failed to demonstrate that Reed failed to exhaust his administrative remedies on this record. Accordingly, Sgt. Hicks is not entitled to summary judgment on this ground.

### B. Eighth Amendment Claim

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). Nevertheless, not every harm caused by another inmate translates into constitutional liability for

8

the corrections officers responsible for the prisoner's safety. *See id.* at 834. The Supreme Court has emphasized that it is *conscious* disregard for intolerable risks that provides the touchstone of the deliberate indifference standard for Eighth Amendment claims:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. Thus, *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837; *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997)).

In *Farmer*, the Supreme Court did not address "[a]t what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes." 511 U.S. at 834 n.3. It is understood, however, that "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). Thus, "[a]ny time an individual is incarcerated, there is some risk that he may be a victim of violence at the hands of fellow inmates." *Westmoreland v. Brown*, 883 F. Supp. 67, 74 (E.D. Va. 1995). Accordingly, a baseline risk of assault inherent to prison life cannot support an Eighth Amendment claim. *See Grieveson v. Anderson*, 538 F.3d 763, 776–77 (7th Cir. 2008).

Courts have found that prison officials are actually aware of a sufficiently substantial risk of assault "where custodians know of threats to specific prisoners posed by a specific source, or place prisoners in the same cell as an inmate known to have violent propensities." *Whaley v. Erickson*, 339 F. App'x 619, 622 (7th Cir. 2009) (citing *Brown v. Budz*, 398 F.3d 904, 914–15 (7th Cir. 2005)). "On the other hand, as the vagueness of a threat increases, the likelihood of actual

9

knowledge of impending harm decreases. So, too, does the official's ability to respond." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (internal citation and quotation marks omitted).

Thus, this Court must first address whether Sgt. Hicks knew of a substantial risk that Raigns would assault Reed. Reed has not demonstrated that he was particularly vulnerable to assault, or that Raigns was particularly inclined to assault other inmates. Nor has Reed produced evidence that reflects Sgt. Hicks knew of any threats that Raigns directed toward Reed. *See Whaley*, 339 F. App'x at 622 (granting summary judgment for defendants where plaintiff "never told the defendants that [the inmate] had made specific threats to harm him, and he presented no evidence that any of the defendants knew about [the inmate's] purported propensity for violence"). Therefore, Reed has failed to demonstrate that Sgt. Hicks knew of a substantial risk that Raigns would assault him before the incident began.

It is undisputed that after the fray between Reed and Raigns began, Sgt. Hicks observed the two men fighting. Thus, even though she did not see what began the altercation, from that point forward, Sgt. Hicks undeniably knew of a risk of harm to Reed. Consequently, Sgt. Hicks, had a duty "to take reasonable measures" to protect Reed from "from violence at the hands of other prisoners." *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 833). Accordingly, the question becomes whether Sgt. Hicks' response to the situation was reasonable under the circumstances. *Farmer*, 511 U.S. at 844 (holding that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted").

The United States Court of Appeals for the Fourth Circuit has provided the following guidance:

> In failure-to-protect cases, "prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the

10

> guards in danger of physical harm." *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995); *see also Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997) (en banc) ("[S]uch heroic measures are not constitutionally required."). But "completely failing to take *any* action" to stop an ongoing assault on a prisoner can amount to deliberate indifference. *Winfield*, 106 F.3d at 532; *see also, e.g., Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 773 (4th Cir. 2003) ("[A] correctional officer who stands by as a passive observer and *takes no action whatsoever* to intervene during an assault violates the [Eighth Amendment] rights of the victim inmate."); *Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994) ("A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault."); *cf. Prosser*, 70 F.3d at 1008–09 (finding no deliberate indifference where prison guard ran to get help immediately after inmate threw first punch at plaintiff). Thus, courts have found that "a corrections officer's failure to intervene in a beating can be the basis of [§ 1983] liability" if the officer had a reasonable opportunity to act and "simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).

*Raynor v. Pugh*, 817 F.3d 123, 128 (4th Cir. 2016) (alterations in original).

As an initial matter, Sgt. Hicks only saw Reed and Raign fighting. Nothing in the record indicates that she knew who started the fight or what began the incident. Further, nothing in the record indicates that, at the time Sgt. Hicks observed the fight, either participant was clearly winning or losing. As such, Reed has failed to demonstrate that, from her vantage point, Sgt. Hicks perceived, or should have perceived, the altercation as an assault by Raign on Reed, instead of mutual combat between two willing participants, or even an assault by Reed on Raign.

More importantly, based on the record before the Court, Sgt. Hicks had no duty to physically intervene in the alteration between Reed and Raign, as that course of action clearly would have placed her "in danger of physical harm," or could have otherwise exacerbated the situation. *Prosser*, 70 F.3d at 1008 (citation omitted); *see also Arnold v. Jones*, 891 F.2d 1370, 1372 (8th Cir. 1989) (emphasis in original) ("[P]rison officials have no duty *as a matter of law* to physically intervene in a prison fight which may cause them serious injury or worsen the situation . . . ."). Faced with a brawl between two inmates in the middle of a crowded dining hall,

11

Sgt. Hicks would have been both foolish and reckless to charge into the scrum. The Constitution does not require those sort of "heroic measures" from prison officials. *Winfield*, 106 F.3d at 532.

Further, Reed suggests that Sgt. Hicks should have sprayed Raign with mace or directed another officer to "shoot the gun to deter [Raign]" (*see* Reed Decl. ¶ 7), but neither of those actions would have been reasonable under the circumstances. First, the record is unclear whether Sgt. Hicks or any other prison officials in the vicinity possessed mace, a firearm, or any other weapon. Even if Sgt. Hicks had these options, which is not clear from the record, using mace or a firearm under these circumstances could have unnecessarily escalated the situation and could have resulted in additional harm to Sgt. Hicks, Officer Robinson, Reed, Raign, or any of the other bystanders.

Based on the record before the Court, Reed has failed to show that Sgt. Hicks responded unreasonably. Officer Robinson immediately notified command staff about the altercation and then she and Sgt. Hicks monitored the situation as the designated Emergency Response Team, who arrived promptly on the scene, carried out their appointed duties. *Cf. MacKay v. Farnsworth*, 48 F.3d 491, 493 (10th Cir. 1995) (holding that the failure of officers to immediately intervene in an attack by a prisoner armed with a "shank" did not amount to deliberate indifference, in part, because a call for backup had been made); *Godfrey v. Russell*, No. 7:14CV00476, 2015 WL 5657037, at *21 (W.D. Va. Sept. 24, 2015) (holding that officers "responded reasonably to the fight and the risks of harm it posed" by "immediately calling for assistance and running to the door to await backup before intervening"). Consequently, Reed has failed to demonstrate that Sgt. Hicks was deliberately indifferent to a substantial risk to his safety. Accordingly, Sgt. Hick's Motion for Summary Judgment (ECF No. 39) will be GRANTED.[7]

---

[7] To the extent that Reed suggests his injuries were the result of Sgt. Hick's negligence (*see* ECF No. 16, at 1–2, 7), such a claim is not cognizable in a § 1983 action. *See Daniels v. Williams*,

12

## IV. CONCLUSION

For the reasons stated above, the Motion for Summary Judgment (ECF No. 39) will be GRANTED. Claim Two will be DISMISSED as to Sgt. Hicks. The Clerk is DIRECTED to terminate Sgt. Hicks as a party to this action.

An appropriate Order will accompany this Memorandum Opinion.

/s/ 
John A. Gibney, Jr.
United States District Judge

Date: 28 July 2021
Richmond, Virginia

---

474 U.S. 327, 333 (1986) ("Where a government official's act causing injury . . . is merely negligent, 'no procedure for compensation is *constitutionally* required.'" (citation omitted)).