IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KIM ALTON REED, JR.,
    Plaintiff,

v.                                  Civil Action No. 3:20cv200

C. HARRIS, et al.,
    Defendants.

## MEMORANDUM OPINION

Kim Alton Reed, Jr., a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] In his Particularized Complaint ("Complaint," ECF No. 16), Reed raises the following claims for relief:[2]

| | |
|---|---|
| Claim One: | Defendants C. Harris, E. Ngoule, S. Smith, and S. Minter denied Reed "adequate medical care" in violation the Eighth Amendment.[3] (*Id.* at 8.) |
| Claim Two: | Defendants T. Robinson and I. Hicks failed to provide "reasonable safety" for Reed in violation of the Eighth Amendment. (*Id.*) |
| Claim Three: | Defendant S. Minter falsified records to avoid liability. (*Id.*) |

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the spelling, punctuation, and capitalization and omits the emphasis in quotations from the parties' submissions, unless otherwise noted.

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

By Memorandum Opinion and Order entered on July 12, 2021, the Court dismissed Defendants Harris, Ngoule, Smith, and Minter from this action because Reed failed to timely serve them. (ECF Nos. 62, 63.) Thus, Claims One and Three are no longer before the Court. By Memorandum Opinion and Order entered on July 28, 2021, the Court dismissed Claim Two insofar as it related to Sgt. I. Hicks ("Sgt. Hicks"). (ECF Nos. 64, 65.) Thus, the only issue remaining before the Court is Claim Two against Ofc. T. Robinson ("Ofc. Robinson").

The matter is now before the Court on the Motion for Summary Judgment filed by Ofc. Robinson. (ECF No. 58.) Ofc. Robinson expressly relies "on the same arguments and authorities previously filed by Sgt. Hicks" in support of her Motion for Summary Judgment. (ECF No. 59, at 4; *see* ECF Nos. 39, 40.) Despite being provided with adequate *Roseboro* notice,[4] Reed has not filed a response. Because Reed fails to demonstrate that Ofc. Robinson was deliberately indifferent to a substantial risk to his safety, the Motion for Summary Judgment will be GRANTED.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When

---

[4] *See Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)). In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere "*scintilla* of evidence," however, will not preclude summary judgment. *Anderson*, 477 U.S. at 252. "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* at 252 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In support of her Motion for Summary Judgment, Ofc. Robinson submits her own declaration ("Robinson Declaration," ECF No. 59-1). Ofc. Robinson also relies upon the documents previously submitted by Sgt. Hicks including: (1) copies of various incident reports, institutional records, medical records, and photographs, (ECF No. 40-2); (2) an Offender Grievance Report, (ECF No. 40-3); (3) a declaration from Christy M. Jones, an Institutional Grievance Coordinator at Lawrenceville Correctional Center ("LVCC"), ("Jones Declaration," ECF No. 40-4); and, (4) a copy of Operating Procedure 866.1, Offender Grievance Procedure, (ECF No. 40-5).

As stated above, Reed has failed to file a response directly addressing Ofc. Robinson's

Motion for Summary Judgment.[5] Because Ofc. Robinson makes the same arguments as Sgt. Hicks and relies upon the same authorities that Sgt. Hicks submitted in support of her Motion for Summary Judgment, however, the Court will consider, as relevant, Reed's submissions in opposition to Sgt. Hick's Motion for Summary Judgment. Reed submitted: (1) his own sworn statement, ("Reed Declaration," ECF No. 47-2); (2) a copy of an informal complaint, dated September 5, 2018, (ECF No. 47-1, at 1); (2) a copy of an informal complaint, dated September 12, 2018, (*id.* at 3); (3) a copy of a regular grievance, dated September 27, 2018, (*id.* at 4–5); and, (4) a copy of a letter to the Regional Ombudsman Unit, dated October 15, 2018, (*id.* at 6–7). The Court also considers the sworn factual allegations contained in Reed's Particularized Complaint. (*See* ECF No. 16, at 11.)

At this stage, the Court must assess whether Reed "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). The facts offered by an affidavit or sworn declaration must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). In this regard, the sworn statement "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted).[6]

---

[5] Because Reed failed to cite to any admissible evidence countering the Motion for Summary Judgment, the Court may rely solely on the evidence cited by Ofc. Robinson in deciding the issue of summary judgment. *See Forsyth*, 19 F.3d at 1537; *see also* Fed. R. Civ. P. 56(c)(3).

[6] Reed has made several statements that are of no value in assessing the propriety of summary judgment. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (internal quotation marks omitted) (citations omitted) ("[a]iry generalities, conclusory assertions[,] and

Considering the foregoing principles and submissions, the Court finds that the following facts are established for the purposes of the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Reed.

## II. <u>RELEVANT FACTS</u>

### A. *The Dining Hall Incident*

On August 30, 2018, Reed was eating at the dining hall at LVCC. (Reed Decl. ¶ 3.) The dining hall "was []crowded." (*Id.*) Ofc. Robinson "was assigned to provide security in the North Side Chow Hall." (Robinson Decl. ¶ 5.) Inmates entering the dining hall "pass through the security booth" and are subject to random pat downs at that checkpoint. (Hicks Decl. ¶ 8.) Reed was not patted down upon entry. (Reed Decl. ¶ 4.) Another inmate struck Reed from behind with a "lock in a sock." (*Id.* ¶ 5.)

Ofc. Robinson "observed Reed and another inmate, T. Raigns ("Raigns") fighting." (Robinson Decl. ¶ 5.) Ofc. Robinson did not see Raigns strike Reed with a lock in a sock or notice a lock involved in the altercation. (*Id.* ¶ 10.) Ofc. Robinson

> responded to the fight and ordered the inmates to cease fighting. They ignored [her] orders. [She] immediately notified command staff. An Emergency Response Team consisting of Sgt. Mays and Ofc. Garnes promptly responded. The inmates were immediately restrained; both were charged with fighting; and they were taken to the Medical Department for a presegregation medical evaluation.

(*Id.* ¶ 5.)

---

hearsay statements [do] not suffice to stave off summary judgment"). For instance, Reed avers that the dining hall was "overcrowded." (Reed Decl. ¶¶ 3, 6.) However, Reed does not specify the number of people that were in the dining hall or its maximum capacity. Thus, while Reed may assert that the dining hall was crowded, he has not established a basis for saying that it was "overcrowded." Similarly, Reed suggests that no inmates were patted down in the dining hall. (Reed Decl. ¶ 4.) However, Reed fails to allege that he personally observed every interaction between each inmate and the various guards that were on duty. In sum, these statements are conclusory and fail to create a material dispute of fact. *Roane*, 378 F.3d at 400–401.

Ofc. Robinson "had no forewarning that Reed and Raigns would begin fighting on August 30, 2018. Both inmates were classified in the same housing unit. They were not listed as 'keep separate.' There were no complaints, reports, or other information indicating that a physical altercation was imminent." (*Id.* ¶ 9.)

### III. ANALYSIS

#### A. Ofc. Robinson Fails to Demonstrate a Lack of Exhaustion

Ofc. Robinson, like Sgt. Hicks before her, asks the Court to dismiss Claim Two because Reed failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). This argument fails for the reasons explained in this Court's Memorandum Opinion entered on July 28, 2021.[7] (*See* ECF No. 64, at 7–8.) Accordingly, Ofc. Robinson is not entitled to summary judgment on this ground.

#### B. Eighth Amendment Claim

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes–Quinones v. Jimenez–Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). Nevertheless, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *See id.* at 834. The Supreme Court has emphasized that it is a *conscious* disregard for intolerable risks that provides the touchstone of the deliberate indifference standard for Eighth Amendment claims:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of

---

[7] Because exhaustion of administrative remedies is an affirmative defense, Ofc. Robinson bears the burden of pleading and proving Reed's lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

serious harm exists, and he must also draw the inference.

*Id.* at 837. Thus, *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837; *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997)).

In *Farmer*, the Supreme Court did not address "[a]t what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes." 511 U.S. at 834 n.3. It is generally understood, however, that "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). Thus, "[a]ny time an individual is incarcerated, there is some risk that he may be a victim of violence at the hands of fellow inmates." *Westmoreland v. Brown*, 883 F.Supp. 67, 74 (E.D. Va. 1995). Accordingly, a baseline risk of assault inherent to prison life cannot support an Eighth Amendment claim. *See Grieveson v. Anderson*, 538 F.3d 763, 776–77 (7th Cir. 2008).

Courts have found prison officials to be actually aware of a sufficiently substantial risk of assault "where custodians know of threats to specific prisoners posed by a specific source, or place prisoners in the same cell as an inmate known to have violent propensities." *Whaley v. Erickson*, 339 F. App'x 619, 622 (7th Cir. 2009) (citing *Brown v. Budz*, 398 F.3d 904, 914–15 (7th Cir. 2005)). "On the other hand, as the vagueness of a threat increases, the likelihood of 'actual knowledge of impending harm' decreases. So, too, does the official's ability to respond." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (quoting *Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005).

The first issue this Court must address is whether Ofc. Robinson knew of a substantial risk of assault. Reed has not demonstrated that he was particularly vulnerable to assault or that Raigns

was particularly inclined to assault other inmates.  Nor has Reed produced evidence reflecting that Ofc. Robinson knew of any threats by Raigns directed toward Reed.  *See Whaley*, 339 F. App'x at 622 (granting judgment for the defendants where plaintiff "never told the defendants that [the inmate] had made specific threats to harm him, and he presented no evidence that any of the defendants knew about [the inmate's] purported propensity for violence").  Thus, Reed has failed to demonstrate that Ofc. Robinson knew of a substantial risk of assault before the incident began.

It is undisputed, however, that after the fray between Reed and Raigns began, Ofc. Robinson observed the two men fighting.  Thus, even though she did not see what precipitated the altercation, from that point forward, Ofc. Robinson was undeniably aware of a risk of harm to Reed.  Consequently, Ofc. Robinson, had a duty "to take reasonable measures" in order to protect Reed from "from violence at the hands of other prisoners." *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 833).  Accordingly, the Court must determine whether Ofc. Robinson's response to the situation was reasonable under the circumstances.  *Farmer*, 511 U.S. at 844 (stating that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted").

The United States Court of Appeals for the Fourth Circuit has provided the following guidance:

> In failure–to–protect cases, "prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm." *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995); *see also Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997) (en banc) ("[S]uch heroic measures are not constitutionally required.").  But "completely failing to take *any* action" to stop an ongoing assault on a prisoner can amount to deliberate indifference. *Winfield*, 106 F.3d at 532; *see also, e.g., Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 773 (4th Cir. 2003) ("[A] correctional officer who stands by as a passive observer and *takes no action whatsoever* to intervene during an assault violates the [Eighth Amendment] rights of the victim inmate."); *Williams*

8

> v. Mueller, 13 F.3d 1214, 1216 (8th Cir. 1994) ("A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault."); cf. Prosser, 70 F.3d at 1008–09 (finding no deliberate indifference where prison guard ran to get help immediately after inmate threw first punch at plaintiff). Thus, courts have found that "a corrections officer's failure to intervene in a beating can be the basis of [§ 1983] liability" if the officer had a reasonable opportunity to act and "simply refused to do so." Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002).

Raynor v. Pugh, 817 F.3d 123, 128 (4th Cir. 2016) (alterations in original).

As an initial matter, Ofc. Robinson only saw Reed and Raigns fighting. There is no indication in the record that she knew who started the fight or what precipitated the incident. Further, there is no indication in the record that, at the time Ofc. Robinson observed the fight, either participant was clearly winning or losing. As such, Reed has failed to demonstrate that, from her vantage point, Ofc. Robinson perceived, or should have perceived, the altercation as an assault by Raigns on Reed, as opposed to mutual combat between two willing participants, or even an assault by Reed on Raigns.

More importantly, based on the record before the Court, Ofc. Robinson had no duty to physically intervene in the altercation between Reed and Raigns, as that course of action clearly would have placed her "in danger of physical harm," or could have otherwise exacerbated the situation. Prosser, 70 F.3d at 1008 (citation omitted); see also Arnold v. Jones, 891 F.2d 1370, 1372 (8th Cir. 1989) (emphasis in original) ("[P]rison officials have no duty as a matter of law to physically intervene in a prison fight which may cause them serious injury or worsen the situation . . . ."). Faced with a brawl between two inmates in the middle of a crowded dining hall, Ofc. Robinson would have been both foolish and reckless to charge into the scrum. The constitution does not require such "heroic measures" from prison officials. Winfield, 106 F.3d at 532.

Further, to the extent that Reed suggests that Ofc. Robinson should have sprayed Raigns

with mace or directed another officer to "shoot the gun to deter [Raigns]," (*see* Reed Decl. ¶ 7), those suggestions were not reasonable actions to take under the circumstances.  First, the record is unclear as to whether any prison officials in the vicinity possessed mace, a firearm, or were otherwise armed.  But even if Ofc. Robinson had these options available to her, the use of mace or a firearm under such circumstances could have unnecessarily escalated the situation and resulted in additional harm to Sgt. Hicks, Ofc. Robinson, Reed, Raigns, or any bystanders who happened to be in the area.

Based on the record before the Court, Reed has failed to show that Ofc. Robinson responded in an unreasonable manner.  Rather, the record reflects that Ofc. Robinson responded to the fight between Reed and Raigns in an appropriate manner.  She ordered the men to stop fighting.  When Reed and Raigns ignored her orders, she immediately notified command staff about the altercation.  Ofc. Robinson and Sgt. Hicks then monitored the situation as the designated Emergency Response Team, who arrived promptly on the scene, carried out their appointed duties.  *Cf. MacKay v. Farnsworth*, 48 F.3d 491, 493 (10th Cir. 1995) (holding that the failure of officers to immediately intervene in an attack by a prisoner armed with a "shank" did not amount to deliberate indifference, in part, because a call for backup had been made); *Godfrey v. Russell*, No. 7:14cv476, 2015 WL 5657037, at *21 (W.D. Va. Sept. 24, 2015); (holding that officers "responded reasonably to the fight and the risks of harm it posed" by "immediately calling for assistance and running to the door to await backup before intervening").  Consequently, Reed has failed to demonstrate that Ofc. Robinson was deliberately indifferent to a substantial risk to his safety.  Accordingly, Ofc. Robinson's Motion for Summary Judgment, (ECF No. 58), will be

GRANTED.[8]

## IV. **CONCLUSION**

For the reasons stated above, the Motion for Summary Judgment, (ECF No. 58), will be

GRANTED.  Claim Two will be DISMISSED.  And the action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

/s/

John A. Gibney, Jr.
Senior United States District Judge

Date: 7 February 2022
Richmond, Virginia

---

[8] To the extent that Reed suggests his injuries resulted from Ofc. Robinson's negligence, (*see* ECF No. 16, at 1–2, 7), such a claim is not cognizable in the context of a § 1983 action. *See Daniels v. Williams*, 474 U.S. 327, 333 (1986) (citation omitted) ("Where a government official's act causing injury . . . is merely negligent, 'no procedure for compensation is *constitutionally* required.'").